## Huey Wilson v. The State.

No. 23570. Delivered February 5, 1947.

*King C. Haynie,* of Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, and *E. B. Duggan* and *E. T. Branch,* Assistant Criminal District Attorneys, all of Houston, and *Ernest S. Goens,* State's Attorneye, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was charged with the offense of rape and, upon conviction, was given the death penalty.

The offense is alleged to have been committed in the City of Houston at about nine o'clock in the morning of May 8th, 1946. Appellant was arrested about four o'clock in the afternoon of May 9th.

The prosecuting witness testified that she had been to the grocery store and left the doors of her house closed but unlocked. When she returned, entering through the kitchen, she discovered the window shades were pulled down. It developed, also, that the telephone cord had been cut. She walked through

the house and came in contact with appellant, a negro man, standing in a doorway. He struck her with something, knocked her down, brutally beat her and, with a knife at her throat, forced her into the bedroom where, according to a detailed statement not necessary to here relate, the unlawful act of rape was committed. After ravishing the lady, the appellant forced her to take all of her money from her purse and give it to him. He refused to touch the purse, as she said, because he did not want his fingerprints on it. He then put her in a closet and demanded that she stay there for fifteen minutes, otherwise he would come back and kill her.

Within a few minutes she ran to the home of a neighbor who called the police and sent the victim to the hospital. Another next door neighbor woman testifies to seeing the appellant, whom she positively identifies, in her own yard. She was attracted by his staring at her and attempting a conversation. She fastened the screen on her door and went about her work. In about thirty minutes she heard the ambulance and discovered the condition of the prosecuting witness, who had gone to the next door neighbor on the opposite side of the house. This witness says that she had a good view of the accused, and had no doubt as to his identity. The prosecuting witness was just as certain that the defendant in the court room was the man who attacked her.

The appellant offered no evidence whatsoever. When he was arrested blood was found on his clothing and also on a knife which had been wrapped in a sock and placed in a dresser drawer. A representative of the Department of Public Safety testified that such was human blood.

A more detailed statement of the evidence is not necessary and would throw no light upon any issue presented to us.

There are two bills of exception in the record which are presented by brief as ground for reversal. The first complains of the evidence of Lloyd Frazier, a police officer, who said that he saw the prosecuting witness a few days later with a bandage across her forehead, and her right eye was bruised and discolored, and she had a bandage over her lip. The upper part of her face was practically covered. One eye was discolored and one was swollen. He is complaining that this evidence was inflammatory, prejudicial and immaterial, as being about three days after the alleged assault. He argues that at the time said

evidence was admitted there was abundant proof of the offense charged, as well as the condition of the prosecutrix, and it related to matters about which there was no controversy.

This evidence is so mild, as compared to that later given by the prosecutrix, that we cannot conceive of it having any prejudicial effect or making any indelible impression on the minds of the jury beyond the necessary evidence of the case. We know no rule by which the State is precluded from offering additional testimony to the same subject, merely on such ground. It is not a case of the State offering to bolster up a witness whose evidence is not under attack. Pictures of the prosecutrix in such condition were offered in evidence.

The second bill of exception complains of the admission in evidence of a brick which one of the officers found in the back yard near the door through which appellant left the residence. The brick was lying on grass and when the officer picked it up, a few minutes after the tragedy, the grass straightened up, showing that the brick had been recently placed there. The brick was exhibited to the jury. There was no blood on the brick, however, and nothing inflammatory appears from its admission. It was probably immaterial and did not corroborate any testimony given by any witness. We are wholly at a loss to find any ground for complaint because of its introduction.

The evidence, when considered as a whole in this case, is remarkably positive and conclusive. The case was tried with fairness and caution. When the officers approached the house in which he was found, a servant's quarters only a few blocks away from the scene of the crime, he barricaded himself in the house and refused to open the door and let the officers enter. They broke in and found him with his hat on. A search disclosed the bloody evidence, as above set out.

In the absence of any defense, a verdict of guilt would be expected and no reasonable mind could be surprised at the penalty.

The judgment of the trial court is affirmed.